# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BRYAN C. THOMPSON,

    Plaintiff,

v.

MAJOR CLEVELAND FRIDAY,
OFFICER JENINE DYER,
OFFICER KENYATTA BARRETT,[1]

    Defendants.

Civil Action No.: JKB-18-2186

## MEMORANDUM OPINION

Defendants Major Cleveland Friday and Officer Jenine Dyer[2] move to dismiss the amended complaint against them. ECF 29. Plaintiff Bryan C. Thompson has opposed the motion (ECF 33), and defendants have replied (ECF 34). No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, the motion to dismiss shall be denied and Thompson's pending motion to appoint counsel (ECF 26) shall be denied without prejudice.[3]

---

[1] Also named as defendants, but not yet served are: Sergeant Porter, Officer Curry, Officer Dorsey, Officer Smith, Lt. Kevin Hickson, Lt. Eric Pulley, Officer Adirimo Jones, Officer Michael Ritenour, Officer Carlos Thomas, Officer Christian Lewis, Officer Lance Hathaway, Officer Stephen Pearson, Officer Jerry Suber, and Officer Shae Martin.

[2] Defendant Kenyatta Barrett, who has been served with the complaint and is represented by counsel (*see* ECF 8, counsel's entry of appearance), does not join in the motion to dismiss.

[3] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717,

## Background

Thompson's amended civil rights complaint concerns his alleged assault by correctional officers while he was a pre-trial detainee at Baltimore City Detention Center ("BCDC"). He states that on May 19, 2017, correctional officers were called to the housing unit where he was detained in response to an "incident." Thompson went to the dayroom area where the disturbance was taking place and observed "numerous officers standing in the hallway of the dorm and control center," including gang intelligence officers, Officer Curry, Facility Administrator Nicole Jackson, Sgt. Porter, and Major Cleveland Friday. ECF 28 at 1. Thompson claims these officers were there "to talk to the inmates of dorm (H) to resolve issues at hand." *Id.*

According to Thompson, the "issues" concerned living conditions including water being shut down and, when it was returned, water that was full of rust, and no working fans, televisions, telephones, or means for personal hygiene. ECF 28 at 2. He explains that the "annex building" at BCDC had been closed since 2016 as was most of the rest of BCDC, with the exception of the "J[ail] I[ndustries] building." *Id.*

A partial narrative of the May 19, 2017, incident is provided by Thompson's exhibits, which include a portion of an interoffice memorandum from Major Friday to Captain Tiffany Agent and a portion of an Intelligence and Investigation Division (IID) report. ECF 28-3 and 28-4. Friday reports that on "May 19, 2017 at approximately 1400 hours a call was made for all available officers to report to the Annex H-dorm for assistance." ECF 28-4 at 1. When officers arrived, it was discovered that one of the inmates, later identified as Renard Prioleau, shattered one of the glass panes in the officer's control center. *Id.* "The rest of the inmates in the dorm were not

---

723 (E.D. Va. 2008). Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No exceptional circumstances currently exist that warrant the appointment of an attorney to represent plaintiff under § 1915(e)(1).

adhering to the commands of the staff" to return to their bunk location. *Id.* Some of the inmates had fashioned shirts or pieces of bedsheets into coverings for their faces "in an attempt to hide their identities." *Id.* Despite that effort, Friday states he assessed the situation and "identified each inmate who was involved in the disturbance." *Id.* A "TAC team" was called to the area. *Id.*

At 1600 hours (two hours after the incident occurred), the "regional TAC team reported to the Annex H-dorm and initiated the removal of the inmate population" to be transferred from the Annex building. *Id.* A total of 34 inmates were removed from the dorm; ten were transferred to Maryland Reception, Diagnostic and Classification Center (MRDCC); fifteen were sent to Jessup Correctional Institution (JCI); and nine were transferred to North Branch Correctional Institution (NBCI). ECF 28-4. Friday states there were six uses of force and that the "inmates who were involved in the use of force were medically cleared and transferred to [NBCI]." *Id.*

The portion of the IID report included as an exhibit recounts the content of a Serious Incident Report indicating that at "approximately 1630 hours ... Thompson refused verbal orders to remove his clothing and submit to a strip search." ECF 28-3 at 1. Thompson "became aggressive and attempted to punch CO-II Kenyatta Barrett, but the officer evaded the inmate's punch and responded by punching [Thompson] multiple times in the face and body." *Id.* Thompson received two Notices of Infraction [("NOI")]; one for concealing his identity by tying a shirt around his face and the second for refusing an order to submit to a strip search and attempting to assault Barrett. *Id.* Both infractions were "dismissed, due to a lack of supporting documents being submitted by the State." *Id.*

The IID report details a September 22, 2017, interview with Thompson at NBCI, during which he recounted the assault he suffered from Sgt. Porter and others as described in the amended complaint. ECF 28-3 at 1. Thompson claimed that "he never had any interactions with CO-II

3

Barrett and he does not know why he issued him the NOI." *Id.* The IID report indicates that Thompson's medical record was reviewed, and x-rays of his shoulder and jaw taken on June 21, 2017, revealed no fractures or dislocations. *Id.*

Thompson claims that after the TAC team arrived and ordered people to return to their bunks, he tried to return to his bunk, but "the door to the dorm came open" and Sgt. Porter "came rushing in and . . . tackled" Thompson. ECF 28 at 2. Thompson fell to the floor and Sgt. Porter "straddled" Thompson and began punching him in the face. *Id.* Thompson claims he tried to block the punches by turning over on his stomach, but could not do so. The assault continued when "other officers started stomping, kicking, and punching [Thompson] in the head and body." *Id.*

Thompson states that Major Friday's assertion, contained in his memorandum regarding the events, that he "assessed the situation" and "identified each inmate who was involved in the disturbance" is essentially an admission that he improperly identified Thompson as a participant. ECF 28 at 3-4, *see also* ECF 28-4. He states that Officer Jenine Dyer was a part of the TAC team and present during the assault on Thompson, but did not directly participate in the assault. *Id.* at 3. He adds that the TAC team arrived approximately one to two hours after order was already restored and under control in the dorm, obviating any need for force. *Id.* at 4.

In addition to Sgt. Porter, Thompson states that Officer Dorsey, a member of the TAC team, kicked Thompson several times while he was on the ground; Officer Kenyatta Barrett punched and kicked Thompson in the head and body; Officer Smith also punched and kicked Thompson; and Sgt. Docket (now a Lieutenant at the Jessup Correctional Institution pre-trial building) intervened and ordered the assault to stop. ECF 28 at 4.

Thompson was picked up off the ground by Officer Kenyatta Barrett and another unknown officer, who dragged Thompson by his arms "past the other dorm," causing scrapes on

4

Thompson's knees. ECF 28 at 4. As Thompson was being dragged, he heard inmate Antoine Mayo ask why they were treating Thompson that way and Barrett answered that Mayo should shut up before he got the same treatment. *Id.* Thompson claims that he was then placed on his knees in the hallway and the officers went into the dorm to begin assaulting Mayo, Joseph Jennings, and other inmates. *Id.* All of the inmates, including Thompson, were transported to medical together; according to Thompson, Mayo received eight stitches to his chin. *Id.* at 5.

Thompson and four other inmates[4] were taken to the Jail Industries building for medical attention. ECF 28 at 3. Thompson was told he needed an x-ray of his head and shoulder. *Id.* Medical records submitted with the amended complaint indicate that Thompson's face was swollen in the area of his right jaw and nose; and he had an abrasion on his forehead and both knees. ECF 28-1 at 1. Following his medical examination, Thompson was escorted to the kitchen area in the Annex building where he was strip searched by two officers whom he does not name. ECF 28 at 3. After being strip searched, Thompson was placed in a van and transported to NBCI in Cumberland, Maryland. *Id.* After he was transferred to NBCI, Thompson was still experiencing pain when opening and closing his mouth, and an x-ray to rule out fracture or dislocation of his jaw was ordered. *Id.* at 4.

## Applicable Legal Standard

In reviewing the complaint in light of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs.*,

---

[4] Thompson names the other inmates as Renard Prioleau, Joseph Davis, Joseph Jennings, and Antoine Mayo. ECF 28 at 3. Thompson also claims that prior to the assault and before the TAC team arrived, Sgt. Porter removed Mr. Prioleau from the dorm and returned with him a short time later. ECF 28 at 1-2.

*Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States has explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants Dyer and Friday assert that the amended complaint fails to allege facts to support a claim of excessive force against them. ECF 29.

## Analysis

To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, Thompson may prevail upon evidence that "the use of force is deliberate – *i.e.*,

purposeful or knowing." *Kingsley v. Hendrickson* 135 S. Ct. 2466, 2472 (2015). Thompson's claim need not allege or prove his alleged assailant's subjective state of mind; instead, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473.

However, liability under § 1983 attaches only upon a showing of personal participation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Thompson admits both in the amended complaint and his opposition response that defendant Dyer did not participate in the assault against him. ECF 28 at 3 ("she did not assault me"); ECF 33 at 2 ("At most, Officer Dyer would be a material witness to the assault."). Thompson alleges, however, that Dyer did not intervene and stood by while he was battered by Dyer's fellow officers on the TAC team. ECF 33 at 2. Taking Thompson's allegations as true, Dyer's failure to stop an unwarranted assault on Thompson is sufficient to support a finding of deliberate indifference to Thompson's safety. *See Thompson v. Commonwealth of Va.*, 878 F.3d 89, 108 (4th Cir. 2017) (citing *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) ("'completely failing to take *any* action' to stop an ongoing assault on a prisoner can amount to deliberate indifference")). There is no evidence before this court to support a finding that the use of force against Thompson was a reasonable reaction to the circumstances confronted by the officers involved. If Thompson's allegation that he was purposely and without cause beaten and kicked while Dyer simply looked on without trying to intervene is true, then he has stated an adequate claim against Dyer. The motion to dismiss is denied as to defendant Dyer.

The allegation against defendant Friday is one indicating supervisory liability, which requires more than a simple showing that Friday was in charge of the officers who committed the assault, *i.e.*, *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link existed between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Again taking Thompson's allegations as true, defendant Friday had actual knowledge that his subordinates engaged in an assault against Thompson even though he was not involved in the disturbance. Further, Thompson's claim against Friday implies that Friday affirmatively ordered an assault on pre-trial detainees who were no longer engaged in a disturbance. The motion to dismiss is denied as to defendant Friday.

### Conclusion

The motion to dismiss filed on behalf of defendants Friday and Dyer will be denied. Thompson's motion to appoint counsel (ECF 26) shall be denied without prejudice. Service of

process on defendants Porter, Curry, Dorsey, Smith, Hickson, Pulley, Jones, Ritenour, Thomas, Lewis, Hathaway, Pearson, Suber, and Martin will be again attempted with the assistance of counsel for defendants Friday, Dyer, and Barrett. Counsel will be directed to file, under seal, the last known business or personal (if no longer employed by the Division of Correction) address for each of the unserved defendants, and the United States Marshal shall attempt personal service on each. Further directives are set forth in the separate order that follows.

Dated this 4 day of December, 2019.

FOR THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge